United States Court of Appeals for the Eleventh Circuit. Hear ye, hear ye, hear ye. United States Court of Appeals for the Eleventh Circuit is open according to law. God save the United States and this honorable court. Good morning. This is Judge Wilson in Tampa. Judge Rosenbaum is in Fort Lauderdale and Judge Hull is in Atlanta. And we have two appeals that are scheduled for argument this morning. And I see that counsel are ready for the first appeal. It's the state of Florida versus the United States. Henry Whitaker is here for the appellate, the state of Florida and Thomas Byron is here for the United States. And Mr. Whitaker, are you ready to proceed with your argument. Yes, Your Honor. May it please the court Henry Whitaker on behalf of Florida. The federal government has adopted an immigration enforcement policy that conflicts with Congress's direction to the executive branch to remove and detain criminal aliens. And in asking the question about the relevant statute here 1226 C I think it's useful to separate out two different issues. The first is whether the language of 1226 C is in fact mandatory. That question is answered pretty squarely I think by Supreme Court precedent in three different decisions at least three different decisions into more versus Kim Jennings versus Rodriguez and pre out versus Nielsen versus pre op. The Supreme Court has pretty clearly told us that the language of 1226 C is mandatory, and that and therefore would displace any ordinary presumption that the executive branch has enforcement discretion, at least where 1226 is applicable. I'm sorry counsel but as a practical matter. There are, and correct me if I have this wrong but my understanding is that there are currently three about 3.2 million non citizens who are subject to orders of removal, and there are 34,000 beds, is that right. Well the government has given us very different figures on detention capacity that roughly right 34,000 is the figure that they have, have you have given us in the record in this case your honor that's correct. Okay, so, so obviously, right. That being the circumstance. It's impossible for all 3.2 million people who are subject to orders of removal to be detained immediately. I mean, you would agree with that as a practical matter right for for all aliens sure but what we're subject to the parts that you are saying are mandatory, and that the government has no discretion as to how to set its enforcement prior, I don't know that that actually is necessarily supported by this record your honor because what we're talking about here are criminal aliens subject to 1226 see which is a relatively cabin category of aliens we're not talking about 3.2 million indeed the record in this case reflects that out of 180,000 bookends that occurred last year and this is in. This is in docket entry 36 exhibit a state of Florida. No, this is nationwide but I guess I'm just trying to address your honors point about about enforcement resources, but I guess here's the point, the record in this case reflects that there were a number of aliens that under the government's new enforcement policy that that that we're in that we're in custody in Florida and that Florida essentially handed to the government on a civil platter that they sort of deliberately declined to take into custody. And I guess the question in my mind is, it's not what does the government at least have an obligation to try to comply with the mandatory obligation of 1226 see and the record in this case I think reflects that they are not even trying and again Mr Whitaker you started your argument with the statement, at least for 1226 see is applicable. As you know, a key issue in this case is whether it's even applicable to these Florida prisoners. When there's no pending removal proceeding against them. Is that not the issue in the case or at least one of the issues. Yes, Your Honor. Absolutely. Okay, so, so we understand, and I think there's rows of on right. We got practical possibilities here which are underpinning this policy. But you said yourself, at least where 1226 see is applicable. So, you saw the circuit decision. You understand the government's position is primarily, this isn't even applicable here against the Florida prisoners, because the government has not started removal proceedings. Now, not, and I think that the record is fairly clear, they gave nine examples, I mean are you, you get you yourself given examples and say nothing's happened right. So why, why is this applicable when this is not pending removal, there's no removal proceeding. That's even begun. Right, right. Well, I think, and the Fifth Circuit's decision was premised on the idea that detention and removal can be sort of separated out in this context and I do not think that is correct, I'm going to the statutory language, you know, pending removal. Okay. And, and why is it even applicable when there's no removal proceedings have even started, much less a final removal order. Well that's because the relevant language in 1226 see actually is applicable to quote, any alien. And in the pre op case, the Supreme Court held I think quite clearly that that term is defined by the aliens who are described in paragraph one of subsection see of section 1226, there's no indication. Would you agree though that 1226 is is an enforcement statute. It's related to enforcement in some way I mean it's it's a detention statute but it's related to to enforcement of the priorities, well it's related to enforcement of the immigration laws. Would you agree. It certainly is related to enforcement. So here's the question, then, isn't there in every context where this type of thing is an issue and prosecutorial resources are not all abundant and decisions have to be made. Isn't in every case where that's the situation discretion, granted to the enforcing authority to decide its priorities and how to use its limited resources know that that's not that's not correct, Your Honor, I mean the Supreme Court recognized in heckler versus Cheney, that certainly Congress has is fully empowered to limit the government's enforcement discretion in particular cases and I think in this particular statute there is substantial effort evidence that Congress did not intend or wish the following enactment of the statute that gave the government, a temporary safety ball. Let me ask you a question though, in, in town of Castle Rock versus Gonzalez, that would be one of these types of prosecutorial types of cases. And in that that was a Supreme Court case, and there. Didn't the court conclude that even though the language was shall arrest that the prosecuting authority still had discretion to determine when it would, I mean it's a practical matter it needed to have that discretion isn't that what the court held. Yes, but the court has held the contrary in three different cases with respect to this particular statute not in the context of enforcement, right, I mean not in the context of making prosecutorial type decisions, immigration resource types of decisions it wasn't in that context. Well, first of all, I think it is about enforcement the court definitely held in those cases that it displaces the government's enforcement discretion, to some degree so I don't think there's any question of some kind of Castle Rock style presumption that Congress has displaced the government's enforcement discretion. It has. And the question is how much, not whether it has. And so I think that the cases like town of Castle Rock are quite beside the point in this context, and, but I think, again, there is no indication in the unqualified language of 1226 see that there is some implicit limitation. If the government has decided to remove someone and I guess it would be quite odd to me, given the history canvassed by the Supreme Court in tomorrow versus can discretion, but the discretion that's limited by this statute is a discretion to release people who are already in custody. Right. I mean, that's to release people are already in the government's custody who qualify under these particular parts of the statute. Right. That's the, that is the part that is limited. No, I don't think that's correct, Your Honor, it's a direction to take aliens into custody, who have committed certain crimes and and engage in other kinds of related misconduct that is an unqualified directive that does not depend on the antecedent exercise of discretion. And I think quite frankly it would be quite odd if Congress in limiting the government's enforcement discretion in this way would have intended, if the government is right, that the application would succeed. And I think that that that is a quite odd reading of the statute because it would read that to be a nullity, what Congress was concerned with in enacting the statute in 1996 was the fact that the government was paying insufficient attention, not just If, if, if, if, let's say the Department of Homeland Security is overwhelmed. And it lacks the resources to address all non citizens who reenter the country illegally after November the 20th, 2020, it's just overwhelming it lacks the resources, just from a purely practical standpoint, what is the Department of Homeland Security's do. Well, I think you're on the only relief we are seeking in this case is a validation of the enforcement guidelines we're not asking, we're not seeking an injunctions actually requiring substantive compliance with 1226 see. So I think the idea is that the government at least has to make an effort to detain and remove criminal aliens subject to 1226 see if the government has various resources grants that may be, you know, something it needs to needs to balance enforcement, once it is it's ice officials are not bound by these enforcement guidelines that conflict with the priorities that have been established by Congress and if there were a future case in which the issue arose whether the government all the all the government argument is that the department cannot prioritize that non violent Non citizens who reenter the country. are required to have the same status as aggravated violence terrorists spies, the government can't prioritize, even if it's overwhelming that that just that doesn't make any sense to me why the state of Florida would even want the Department of Homeland Security, not to prioritize. Your Honor, to be clear, we're not we're not contending that the government shouldn't prioritize it may need to. We're just we are just saying that it needs to prioritize in a manner consistent with how Congress has directed the government to prioritize. I mean, President Obama's solicitor general told the Supreme Court that Congress argument is that the department can't prioritize. No, no, Your Honor that that's not our argument. Our argument is that the department needs to prioritize in accordance with the directives of Congress here in 1226 see Congress has directed the executive branch to prioritize the detention and removal of criminal aliens and it is not doing that in the enforcement guidelines and it's and it's not all criminal aliens is criminal aliens convicted of aggravated felonies. And your argument is Congress says they shall be tamed and removed. That's your argument. Can you identify anybody in Florida jail. I assume there are quite a few people who would meet the definition of criminal aliens convicted of aggravated felonies, but I didn't see where anybody's identified anybody who's getting out. That's actually got a removal proceeding, and notice appear against them, you haven't identified one have you. That's right, Your Honor. Well, I understand the government. There's nobody here that you put in the record that's in Florida jail right now. That meets the definite first of all, I am sure, hypothetically, there are many that meet the definition of criminal aliens convicted of aggravated felonies, but my question is, you haven't identified a single one that has a removal pending removal proceeding against them, correct. That's right, but the government's obligation in this context, Your Honor is not dependent on the existence of the pending removal proceeding, and I think I know that's that's one of the issues in the case though. I mean the government says it is you say it isn't that's part of the case right. It is, it is part of the case, and I guess and I'd like to, if I may. Well, I see that I'm into my rebuttal time. Yeah, this is what helped me with this. It doesn't, the statute doesn't say the government's got to initiate removal proceedings against every criminal alien in the United States, the statute says the government may correct. No, that's not correct, Your Honor, the in 1226 see not a. I'm not a. Well, that's right, Your Honor, but I think that has me right. That's true, but the aliens we're talking about, Your Honor, are not subject to that discretionary language because they are criminal aliens were subject to 1226 see which notably in contrast to the language, Your Honor mentions contains mandatory language, wiring to detain those aliens and because detention in this context as the Supreme Court made clear into more versus Kim is pending removal proceedings I don't think it's possible to separate out the removal proceeding from an unqualified obligation to detain as the Fifth Circuit I think mistakenly decision. You can't separate out those two things in this context, and the pending removal proceedings in subsection a of the statute only underscores that the tension under subsection see necessarily carries with it, a removal proceed. That supports our argument, not theirs. I think I see that I'm well into my rebuttal time, Your Honors, I'd be, I'd be happy to continue or ask answer further questions if you have more questions for me. All of your rebuttal time is reserved Mr. Thank you. And we'll hear from Mr. Thank you. Please the court Thomas Byron from the Department of Justice here on behalf of the federal government defendants. The district court here properly denied the preliminary injunction which is of course it was extraordinary relief in the first instance that Florida seeks, and it's particularly extraordinary that Florida seeks an injunction that would constrain the deep rooted prosecutorial discretion that the Supreme Court has repeatedly recognized is the questions to my friend Mr Whitaker demonstrated in cases like Castle Rock and heckler against Cheney. The practical concerns that you raised that Wilson and your questions are really quite significant and judge Rosenbaum you did as well very, very significant here the record demonstrates that there are appropriated funds by Congress to support only 34,000 to use that capacity in related proceedings in the Fifth Circuit, which recently issued a stay decision, staying in injunction very much like the one Mr that Florida seeks here. The court there recognized that that fundamental deep rooted prosecutorial discretion was not disturbed by Congress in section 1226 see, indeed, as the courts questions correctly recognize the provisions of 1226 see apply only after there's been an initial decision that fundamental prosecutorial discretion decision to charge an individual non citizen by issuing a notice to appear and proceeding with removal proceedings before an immigration judge that predicate is essential, because otherwise there's no, it would be insufficient merely to use the word shall important Castle Rock emphasized in city of Chicago as well. Merely using the word shall does not fundamentally alter that deep rooted prosecutorial discretion, or as heckler said the law enforcement discretion that federal agencies always have. In particular here I think it's worth focusing on the Fifth Circuit stay decision. Florida, in its briefs and argument today fundamentally mischaracterizes the Supreme Court's decisions in the 1226 see cases such as pre app Rodriguez, etc. Those cases were not about prosecutorial discretion they didn't address the question presented here, and they did not hold as Florida argues that the provisions of section 1226 see require the initiation of enforcement proceedings. Now to be fair, Florida was unclear in its initial briefing both in this court and in the district court about the scope of entitlement or the scope of the injunction it's on, but it has clarified now in its response in its 28 day response concerning the Fifth Circuit stay decision it has clarified that Florida does seek Florida argues and I'm quoting here from page one of their 28 day response Florida argues that section 1226 see requires the initiation of removal proceedings. That is precisely the deep rooted prosecutorial discretion that the Fifth Circuit held consistent with Supreme Court precedent has not been disrupted by 1226 see which pertains only to the detention and the availability of bond release release on bond and bond hearings of individuals in removal proceedings, and is there anything in the Fifth Circuit decision that's incorrect from the government's point of view. We'll just hope. We certainly disagree with certain elements of the court's conclusions about the likelihood of success in the marathon, certain aspects but of course we didn't have to prevail there and we don't have to prevail here on every one of the arguments we've raised, because there are several reasons why Florida's arguments fail on the merits, and moreover why as the Fifth Circuit correctly recognized the irreparable injury to the federal government of constraining prosecutorial discretion goes fundamentally to the separation of powers, and is irreparable, and that the balance of equities would not support a preliminary injunction in this context. So, I'm a little confused if you clarify for me what you say you disagree with. I mean they just said, pretty much the injunctive standard, but so we know like success on the merits and so forth, but is there any part of the injunction that they left in place that you disagree with, or is there any reasoning there that you think is wrong. Well just hope. I think that they left in place. As we understand the injunction that remains in place, it essentially addresses what the government has what DHS has always understood 1226 c to require, which is that with respect to individuals already in detail in removal proceedings and already detained may not be released, pending the removal proceedings conclusion. That's only what does that's the narrow scope of 1226. I think that's right. Judge Holland my understanding of the Fifth Circuit state decision is that it left in place the injunction, to the extent that it merely requires the, the government to continue enforcing or to continue applying 1236 see as we always have Florida, by the way, mischaracterizes as well. The government's historical interpretation and application of the statute, this is not a change in the current administration, our interpretation has been consistent and it is exactly as you say Judge Hall, that when there is removal proceeding pending and when the statute is held. That's what we've always held no administration has ever adopted the extraordinary interpretation of that statute that Florida urges here, which would not only apply in those circumstances that we've been discussing, but would also compel the initiation of removal proceedings against individuals that a particular state identifies it would allow a state to arrogate to itself, the federal government's fundamental and significant enforcement authority in the immigration arena, and that would be improper. And is the record correct right now Florida hasn't identified one person who is a criminal alien that meets the aggravated felony definition although I realize it's a little bit broader here, but we'll just say aggravated felony for purposes of encompassing whatever the class of aliens that are subject to 1226 see Florida hasn't identified anybody that they're having to supervise or get ready to supervise that is actually in removal proceedings. Is that correct, I believe that's right, Judge Hall that's my understanding of the record as well. I mean, not, not even a final move or just in removal proceedings. That's my understanding is that no notice to appear has been issued with respect to the individuals for it as identified in the record, and that that's significant because that is a predicate requirement 1226 see as the Fifth Circuit recognized and by the way the Fifth Circuit actually emphasize that that is the lesson of Johnson against Rodriguez Supreme Court's decision that that Florida contends hold something quite different, the opposite, and that's just not, that's not correct that's not what they can't do a notice and appears now is because you got to put the notice to appear on the date and the same hearing. You got to put it in the first document. They don't even know when they're going to get out of jail, and the Supreme Court's told us now you got to have the notice to appear and the date of the first hearing and the same document right. Yes, you've identified some of the, the many complicated vagaries, they don't have state prisoners with this now because it's hard enough to serve people that are out with it, or whatever. Gentle you're absolutely right there, there are a lot of complications and initiating removal proceedings and right. And as you say as well in identifying aggravated felony situations under the categorical and modified categorical approaches, as this courts and other more about identify I mean, I guess, you would have to do criminal aliens and go into the death. I mean it's judges have trouble doing it. So you're right that with the limited bed capacity, and all the constraints that we have on it with coven and other injunctions. The, you know, the, the net is we're right now by the way in the Fifth Circuit stay record demonstrates this in our state motion that court we included an updated declaration from Mr Berg, and that demonstrates that we're at 95% of available bed capacity right now and remember available is actually about 75% of 34,000 so it's about 29,000 right now we're at 20. I'm sorry 95% capacity so we've very limited currently empty bed space to deal with the highest priority threats to public safety, national security and border security. And, and those are the focuses of the interim priorities. And it's important also to recognize that these interim priorities will be superseded in less than a week. By the end of September that's next Thursday, the Department of Homeland Security has committed to issuing the revised priorities that will supersede these that will render this appeal moot altogether, and that will therefore require this court not to. It will preclude this court from having to consider this one. What do we say about that because the government said that five other times already we don't have them done next week, and there's a lot going on next week. So, certainly understand that we've been unable to make the earlier deadlines that we identified however I've been assured and and as, as you may know, we made the same representation in the Fifth Circuit, that this was a firm deadline that the agency. Okay, let me ask you this then the problem here then is, I doubt they're going to be materially different on as far as this issue. Okay, so let's say that this particular issue suppose the final are pretty much like this, then where are we. Well, I don't want to presume that they will be very much like the interim priorities I think there'll be the subject of extensive study if you look at earlier priorities issued in other administrations going back more than 20 years in fact, in fact, going back to even I know they change. I know they change. I don't question that, but we're in a different time with different issues going on and sure. I think there'll be similar in certain relevant respects which is, for example, the the fundamental statutory interpretation of 1226 seat only applies after notice to appear it only applies to individuals in detention and whether they're they're they're entitled to bond hearings, that's not going to change you're absolutely right but that's a statutory question, the parties themselves. I don't know what they're going to say, Judge Hall but but I do think it's important to evaluate them on their own merits and let's let's even assume that even if they did say essentially the same kinds of ordering same basic focus. It would still be true for all the reasons we pointed out in our brief. The, the, that it would be committed to agency discretion, as heckler makes clear, and that that fundamental deep rooted discretion was not constrained by Congress and 1226 see it is not the proper basis for an injunction, like the one that Florida seeks in this case, and that Texas sought and obtained and was stated in the Fifth Circuit. So, with. I'm sorry, counsel. If when the new priorities get issued assuming that they get issued next week, or before we can get our opinion out on this case whatever it may wind up being. I mean, to follow up on what Judge Hall was asking you about. And to follow up on something you said that is that the fundamental kernel of, as I understand the state's case is that they don't agree with the government's interpretation of 1226 see to require only as it pertains, well, first of all to allow for prosecutorial discretion, and second to to apply only as it pertains to people who are already in detention. So, is there a reason why this wouldn't be moot since that is the same issue that would continue to exist it sounds like regardless of whatever the priorities of enforcement are. Is there some type of capable of repetition yet evading review exception that might be applicable or any other. Any other exception that might be applicable to mootness doctrine. I mean, Jim Rosenbaum I don't want to preclude the arguments that I'm sure my friend will make in response to whatever happens next week and you know what we argued to the court. I don't want to get ahead of all that but but I can say that I think at this point, I can't imagine that exceptions like capable of repetition would apply in the circumstances, because the administer on review of agency actions is limited to the administrative record that administrative record, and in fact the agency decision itself are going to be different, and that would be the appropriate basis for any new challenge to the final priorities when they're issued. Anyway, I merely meant to point out that the I see my time's expired if I could just wrap this point up. I merely wanted to point out to the court that the Fifth Circuit emphasize that the balance of equities supported the stay and did not support an injunction, in part because the interim priorities had been in effect since February with the exception of a few in recognizing that it that there's no basis at this time for the extraordinary that Florida seeks. In this case, it's going to happen, is it going to be that this case is remanded a lot of men, the complaint they have. What. I guess we'll have to get supplemental briefing is the government and let the plaintiff decide what they think it should be. Certainly Judge Hall I think it's likely that we'll have motion practice on this and so again I don't want to get ahead of that. I do, I do think that it's pretty likely that we would argue that the dispute is moot when the interim priorities are superseded and then on that basis months and where it would require, you know, they could are of the underlying decision and since there's nothing meaningful that was decided here. That wouldn't be a significant aspect but but dismissal of the underlying action as well for it could always of course bring a new complaint challenging any new agency action that it believes is inconsistent standards, and we could litigate that that that again would be a different dispute than the one we have here. Happy to address any other questions if the court has them I see my time has expired. We would urge the court to affirm the correct denial of preliminary injunctive relief stopped by Florida in this case. Thank you. Thank you, Mr. Bauer and Mr. Thank you, Your Honor. I just want to briefly talk address judge help Paul's point about the difficulty of identifying alien subject to 1226 see the record in this case reflects and I think I don't think the government disputes that there were in fact criminal aliens that had detainers issue, who were subject to 1226, see that the government made a deliberate decision not to take into into federal custody after they were released from state custody so here there's no question of identifying alien subject to 1226 see again the issue here is whether when presented with such an alien on a silver platter, so to speak, you know the government has an obligation to take action consistent with the mandatory directive of Congress, you also mentioned the difficulty of issuing a notice of appearance. I don't think that we're suggesting that there needs to be sort of and I'm actually I'm not even sure that the government is suggesting, but obviously my friend can correct me if I'm wrong, but that a notice of appear has to issue before detention, I think the important point is just that a removal proceeding must issue at some point because that is what measures, the length of detention consistent with the more versus Kim. I also want to address briefly the Fifth Circuit decision because I think that there is a part of the Fifth Circuit decision it's actually quite helpful to Florida's position in this case and while we certainly disagree with the Fifth Circuit sort of core conclusion. I think at the same time the Fifth Circuit did recognize that 1226 see is a significant limit on prosecutorial discretion, and that the shell is indeed mandatory in some circumstances and I guess, given that conclusion it's very difficult for me to see how it can be mandatory with respect to certain prosecutorial decisions, but yet the same, the exact same language is is not mandatory with respect to others the Supreme Court as a general matter has told us to interpret has told us told us to interpret federal statutes consistently. And I think that would be quite inconsistent. But the Supreme Court has never constrained the exercise of prosecutorial discretion, even with the type of mandatory language that exists in the statute in this case, as a. Well, I don't think that's that's quite correct Your Honor I mean heckler versus Cheney certainly reflects that there are limits on the government's enforcement discretion, and indeed and heckler versus Cheney if you look at footnote for the court actually identified a DC Circuit decision versus from 1983 called Adams versus Richardson, which actually ordered the government to institute title six enforcement proceedings against various schools who were sort of recalcitrant in conducting desegregation. So there is there certainly is precedent in certain circumstances when you have, you know, a circumstance where Congress has exercised its constitutional authority to constrain the exercise of executive branch prosecutorial discretion where the executive branch may be required to terminate certain proceedings or indeed initiate certain proceedings. So, what do you have to say about. Let's just assume for purposes of the question that a new set of enforcement priorities is issued next week what what are your thoughts on what happens with this case. I'm not sure yet Your Honor I think I really would have to see them to take a position on what would happen at that point, and evaluate our options and I don't want to get ahead of what the government is going to do. Obviously we're seeking a preliminary injunction. In this case, the government has, you know, these things take time I understand that but the government has missed certain several deadlines before so they say they're going to issue next week and I guess I'll believe it when I see it. And we can go from there, but I'm not going to take a position on what what should happen. You know, without knowing what the guidelines are I guess. Can you rule, can you rule out the possibility that this case would become moved. I can't rule it out Your Honor but but I can't certainly rule out the contrary, and definitely happy to tell the court our position when we see that when we see the actual guidelines. But on resource constraints or on on on resource constraints, I just want to stress that I think I got cut off there was there was there is something in 1220 succeed and spoke to this to it in the two year period after 1220 succeed was enacted, Congress provided a safety valve, in the event that the government lacks sufficient attention capacity to comply with the new the new mandatory detention requirements that Congress was enacted to constrain the executive branches prosecutorial discretion and the fact that it specifically spoke to that in the very statute that created this mandatory obligation I think speaks quite clearly that the kind of considerations that resource considerations is not a basis for departing from the mandatory language of the statute itself. I see that my time has expired. I'd be happy to answer any further questions the court might have for me. We have your argument, Mr Whitaker and Mr Byron, thank you.